**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GEORGE MOORE and ROBERT HOSSFELD, individually and on behalf of others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 23-cv-16587<br>)<br>) Judge April M. Perry |
| FARMERS GROUP, INC., FARMERS NEW WORLD LIFE INSURANCE COMPANY, FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, and MID-CENTURY INSURANCE COMPANY, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**OPINION AND ORDER**

This is a consumer protection action based on claims arising from telemarketing calls received by Plaintiffs George Moore and Robert Hossfeld. Plaintiffs allege receiving multiple calls soliciting them to purchase Farmers insurance products. According to Plaintiffs, these calls were either received at telephone numbers they had placed on the national do-not-call registry or after requests were made not to receive further calls. The second amended complaint asserts four causes of action against Defendants Farmers Group Inc., Farmers New World Life Insurance Company, Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, and Mid-Century Insurance Company (collectively, "Defendants"). Doc. 95. Namely, Plaintiffs allege that:

- Defendants placed calls to numbers that Plaintiffs had listed on the national do-not-call registry, in violation of certain provisions of the Telephone Consumer Protection Act ("TCPA"), 47 C.F.R. § 64.1200(c)(2) (Count I);

- Defendants continued calling Hossfeld after he made a do-not-call request, in violation of certain TCPA provisions, 47 C.F.R. § 64.1200(d) (Count II);

- Defendants used a prerecorded or artificial voice in a call to Hossfeld, in further violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) (Count III); and

- Defendants are liable under a state law negligence theory for their alleged failure to keep certain records relating to telemarketing calls (Count IV).

Plaintiffs press claims on their own behalf and on behalf of proposed classes, though class claims are not presently at issue.

Defendants move to strike certain allegations pertaining to Count I of Plaintiffs' complaint and to dismiss Plaintiffs' remaining Counts under Federal Rule of Civil Procedure 12(b)(6). Doc. 105. For the following reasons, Defendants' motion is denied in part and granted in part.

## BACKGROUND

Defendants sell insurance products and services through telemarketing calls, at least some of which are made by third-party agents to prospective customers on Defendants' behalf. Doc. 95 ¶¶ 106–109. While their precise roles differ, all Defendants have a financial incentive in the sale of insurance policies bearing the Farmers mark and exercise varying degrees of control over the day-to-day operation of the third-party agents and vendors that make telephone solicitations on their behalf. *Id*. ¶¶ 114–15. Plaintiffs also maintain that despite their legal obligation to do so, Defendants fail to track records of calls or customer consents, maintain records of telemarketing

scripts, or retrieve call and consent records from agents and subagents upon termination of agency relationships. *Id*. ¶ 142.

In 2015, Plaintiff Hossfeld registered his personal cell phone ending in 8888 (the "8888 number") on the national do-not-call registry, *id*. ¶ 19, a database maintained by the federal government. *Id*. ¶ 8; *see also* 47 C.F.R. § 64.1200(c)(2). On July 21, 2020, Hossfeld received a call to another one of his telephone numbers from an operator who told Hossfeld he worked for the Justin Robert Farmers agency and at some point transferred Hossfeld to a woman named Maria. *Id*. ¶¶ 44–45. Hossfeld made a do-not-call request on this call. *Id*. ¶ 45. Later on, Maria sent Hossfeld an email informing him that his information had been received through a company named "WUSOO." *Id*.

On September 13, 2021, Hossfeld received another call at his 8888 number. *Id*. ¶ 46. Hossfeld spoke with the operator, who explained that Hossfeld could save money on car insurance. *Id*. ¶ 47. After taking down some of Hossfeld's information, the operator tried to transfer the call to a licensed agent. *Id*. This transfer failed, however, and caused the following "prerecorded message or artificial voice" to play: "This phone number is in the Do Not Call list. Do not transfer this phone number." *Id*. ¶ 48. During the call, Hossfeld also asked what company the operator worked for, and the operator replied that he worked with "Farmers, among others." *Id*. ¶ 49.

In 2023, Hossfeld received four calls soliciting Farmers insurance products. On January 20, Hossfeld received a call to his 8888 number from a person who, after recording some of Hossfeld's information, tried unsuccessfully to transfer him to a licensed agent. *Id*. ¶¶ 50–51. The caller indicated "that his company, U.S. Auto Care, worked with Farmers, among others." *Id*. ¶ 52. On January 27, Hossfeld received another call to his 8888 number from a phone with

3

last four digits 0599 (the "0599 number"), also selling insurance. *Id*. ¶ 53. On May 2, Hossfeld answered another call from the 0599 number. *Id*. ¶ 54. After answering some questions, the caller transferred Hossfeld to a Farmers insurance agent who tried to sell Hossfeld insurance. *Id*. Hossfeld received a final call from the 0599 number on July 5, again from a caller seeking to sell Defendants' insurance products. *Id*. ¶¶ 56-58.

Plaintiff Moore's experience is similar. At different points in or before 2017, Moore registered three personal phone numbers on the national do-not-call registry: a number with last four digits 3205 (the "3205 number"); a number with last four digits 8035 (the "8035 number"); and a number with last four digits 3200 (the "3200 number"). *Id*. ¶¶ 17–18. On January 25, 2021, Moore received a call to his 3205 number from a telemarketer named Mike Price, who explained he was selling Farmers insurance products. *Id*. ¶¶ 65–68. On March 1, 2021, Moore received another call to his 3205 number, this time from an individual who self-identified as "Brent Hinton with Farmers Insurance." *Id*. ¶ 71. Moore expressed some interest in insurance, but no sale consummated on either of these calls. *Id*. ¶¶ 69, 74. Five times in 2021—on May 3, May 4, August 20, August 27, and August 30—Moore received calls to his 8035 number from individuals identifying themselves as being from Farmers Insurance and offering him price quotes on automobile insurance policies. *Id*. ¶¶ 79–88. Finally, on March 13, 2024, Moore received a call to his 3200 number from another caller from "Farmers" soliciting Farmers insurance products. *Id*. ¶ 90–91.

## ANALYSIS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in

4

the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). Defendants seek dismissal of Counts II, III, and IV of Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6). The Court considers these arguments first, before addressing Defendants' motion to strike certain allegations contained in Count I of the second amended complaint.

    I.    **Count II—47 C.F.R. § 64.1200(d)**

Count II of Plaintiffs' complaint asserts a violation of the TCPA's internal do-not-call list regulations. 47 C.F.R. § 64.1200(d). These regulations provide that when a telemarketing caller "receives a request from a residential telephone subscriber not to receive calls," that request must be recorded and honored "for 5 years from the time the request is made." *Id.* § 64.1200(d)(3), (6). These regulations also apply to the entities that hire callers to make calls on their behalf. *Id.* § 64.1200(d)(3) (the "person or entity on whose behalf the call [was] made will be liable for any failures to honor the do-not-call request."). Plaintiffs allege Hossfeld received four telemarketing calls in 2023 regarding Farmers products, despite making a do-not-call request within the preceding five years. *See* Doc. 95 ¶¶ 44–58.

Defendants argue that (1) Hossfeld did not allege making a do-not-call request on September 13, 2021; and (2) the complaint does not specify whether on July 21, 2020 Hossfeld requested to be placed on Defendants' internal do-not-call list or, rather, only on the do-not-call list for the third-party agency that placed the call. The Court agrees that the complaint does not allege that Hossfeld made a do-not-call request on September 13, 2021. *See* Doc. 95 ¶ 46–49. But for the July 21, 2020 call, the complaint alleges that Hossfeld's do-not-request was made to a

5

representative of the "Justin Robert Farmers agency." Doc. 95 ¶ 44–45.[1] This suffices to plead a violation of TCPA's internal do-not-call regulations, which extend liability for not honoring do-not-call requests beyond the callers to the entities on whose behalf calls were made. *See* 47 C.F.R. § 64.1200(d)(3–5). As the complaint alleges that Hossfeld was solicited to buy Farmers goods and services from an agency using Farmers' trade name, Plaintiffs have plausibly alleged the calls were made on Farmers' behalf. Doc. 95 ¶¶ 44, 58.

Do-not-call requests also apply to affiliates of the entity on whose behalf the call was made if a "consumer reasonably would expect them to be included given the identification of the caller and … the product being advertised." 47 C.F.R. § 64.1200(d)(5). Plaintiffs allege that Defendants "intentionally obscure the differentiation between themselves and their intercompany relationships to the public" and operate generally as a "Farmers" group of insurance companies. Doc. 95 ¶¶ 105–14. Viewing these allegations in the light most favorable to Plaintiffs, the Court concludes a reasonable consumer would expect all Defendants to be included in a do-not-call-request made to a telemarketer advertising Farmers products. That is, to the extent Defendants contend Hossfeld's July 21, 2020 do-not-call request was inadequately specific as to which Defendants were meant to be covered, the Court rejects the argument.

For these reasons, the Court denies Defendants' motion to dismiss Count II of Plaintiffs' second amended complaint.[2]

---

[1] Defendants assert that Hossfeld "received a call from WUSOO" and that the "WUSOO representative" told Hossfeld the call was from the "Justin Roberts Farmers agency," *see* Doc. 121 at 3, but the Court does not read Plaintiffs' complaint that way. Plaintiffs allege that Hossfeld received a call from employees of the Justin Roberts Farmers agency, and that on that call, those employees explained that they had received Hossfeld's information from "another company" named WUSOO. Doc. 95 ¶¶ 44–46.

[2] Defendants' argument that Count II does not allege that Moore asked Defendants to stop calling is true, but also irrelevant considering that Count II is brought only in Hossfeld's name. *Id.* ¶ 185.

## II. Count III—47 U.S.C. § 227(b)(1)(A)

Count III of Plaintiffs' complaint asserts a claim based on the 'robocall' provisions of the TCPA. Congress enacted the TCPA in 1991 to combat "the proliferation of intrusive, nuisance calls to consumers," and in recognition of "[a]dvances in automated technology [that] made it feasible for companies to execute large-scale telemarketing campaigns at a fraction of the prior cost." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021). Of particular concern to Congress was "the development of robocall' technology [that] allowed companies to make calls using artificial or prerecorded voices, obviating the need for live human callers altogether." *Id*. Accordingly, the TCPA make it unlawful for a person "to make any [phone] call … using … an artificial or prerecorded voice" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A).

Plaintiffs allege Defendants violated this TCPA provision based on the call to Hossfeld on September 13, 2021. As alleged, a live operator initiated this call and, after speaking with Hossfeld, attempted to transfer the line to a licensed agent. Doc. 95 ¶¶ 47–48. This transfer appears to have failed, however, because when the operator tried to patch in the licensed agent, the following recording played: "This phone number is in the Do Not Call list. Do not transfer this phone number." Doc. 95 ¶ 48. Other than this call, Plaintiffs allege no other calls involving use of any prerecorded or artificial voice.

Defendants seek to dismiss Count III on two grounds. First, they argue that none of Defendants made the September 13, 2021 call—an unidentified third-party operator did—and second, that this third-party operator lacked legal authority to call on Defendants' behalf. The Court is skeptical of these arguments, given entities may be held liable for TCPA violations

7

through the conduct of their agents. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021), citing *Dish Network*, 28 F.C.C.R. 6574 (2013).

But the Court need not delve into the specifics of agency law at this stage because there is a larger issue with Plaintiffs' Section 227(b)(1)(A) claim. Plaintiffs would have the Court interpret 47 U.S.C. § 227(b)(1)(A) to cover calls made by live operators if at some point during the call an artificial or prerecorded voice plays. This is a question of statutory interpretation, and when interpreting statutes, the Court begins with the text's "ordinary, contemporary, common meaning." *Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023). And while courts always "exercise their independent judgment" when interpreting statutes, they may pay "[c]areful attention to the judgment of the Executive Branch [to] help inform that inquiry." *Grand Trunk Corp. v. Surface Transp. Bd.*, 143 F.4th 741, 748 (7th Cir. 2025), quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

The Court focuses on the word "make," which appears in Section 227(b)(1)(A) as part of the phrase "make any call." The ordinary meaning of making a call means dialing, placing, or initiating a call, either manually by a human being or—as Congress recognized when it passed the TCPA—through automated technology that allowed calls to be placed *en masse* without need for a live human operator, *i.e.*, a robocall. That making a call means initiating a call also aligns with regulations implementing Section 227(b)(1)(A)'s requirements, which specifically proscribe initiation of calls using an automatic telephone dialing system or an artificial or prerecorded voice. *See* 47 C.F.R. § 64.1200(a)(1).

Based on this interpretation, the Court concludes Section 227(b)(1)(A) does not reach the September 13, 2021 call. Plaintiffs allege that a live operator initiated this call, and that this operator spoke with Hossfeld and took down some of Hossfeld's information. Doc. 95 ¶ 47. At

8

some point during the call, the operator attempted to transfer the call to a licensed agent, which caused a message to play that Hossfeld's call should not be transferred. The complaint is silent as to what happened next, but the Court does not believe it is a reasonable inference that the call was then transferred to someone else. In other words, the facts as alleged do not plausibly establish either that the first call was made using an artificial or prerecorded voice, or that a secondary call-within-a-call was made using an artificial or prerecorded voice. To the contrary, if anything, the secondary call was *stopped* by virtue of an artificial or prerecorded voice. The Court declines to interpret the text of the TCPA beyond its common meaning of initiating a call, especially in a case where the prerecorded voice was used to halt the type of unwanted telemarketing activity that the TCPA was designed to address.

Given that Plaintiffs allege no other calls with a prerecorded or artificial voice, Count III of Plaintiffs' complaint is dismissed without prejudice.

### III. Count IV—Negligence

Count IV of Plaintiffs' complaint asserts a state law negligence claim. "[T]o plead a cause of action for negligence, a plaintiff must plead that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Cowper v. Nyberg*, 28 N.E.3d 768, 772 (Ill. 2015). In their briefing, Plaintiffs clarify that they assert a claim for spoliation of evidence, a recognized form of negligence under Illinois law. *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012). Tracking the traditional elements of a negligence claim, pleading a spoliation claim requires a plaintiff to plausibly allege that "(1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss

9

or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages." *Id*.

Here, Plaintiffs allege that the Telemarketing Sales Rule ("TSR"), 16 CFR § 310.5, creates a duty for telemarketers to keep certain types of records. Doc. 95 ¶ 142. According to Plaintiffs, Defendants' failure to maintain the required records will make it difficult or impossible for Plaintiffs to prove violations of the TCPA.

Defendants raise multiple arguments for Count IV's dismissal. The first is that Congress only provided a private right of action to persons harmed by violations of the TSR where the "amount in controversy exceeds … $50,000 in actual damages for each person adversely affected by such telemarketing." 15 U.S.C. § 6104(a). Thus, Defendants contend Plaintiffs' TSR-based claim fails because Plaintiffs have alleged less than the $50,000 threshold. However, Plaintiffs' claim sounds in negligence, not the private right of action provided by Congress in 15 U.S.C. § 6104(a). These are distinct causes of action with different pleading requirements. *See Cowper*, 28 N.E.3d at 774. Whether or not a statute provides for an independent cause of action—either impliedly or expressly—it may also "set forth the particular … duty that was alleged to have been breached" in a negligence action. *Id.* at 775. Thus, while $50,000 in damages may be a requirement for bringing a TSR claim, Defendants do not identify—nor has the Court's own research surfaced—any cases suggesting such an amount-in-controversy requirement for a negligence claim under Illinois law.[3] The Court declines to read such a requirement into Illinois law.

---

[3] Plaintiffs also note that another part of Section 1604 provides that "[n]othing in this section shall restrict any right which any person may have under any statute or common law." 15 U.S.C. § 6104(e). Though they press their $50,000 threshold argument in their reply, Defendants do not respond to this argument.

10

Defendants' remaining dismissal arguments challenge the substantive elements of a negligence claim, including duty, causation, and injury. The Court starts with duty. "Whether a duty is owed presents a question of law." *Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011). There is no general duty under Illinois law to preserve evidence. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270 (Ill. 1995). Rather, when evaluating whether plaintiffs have adequately alleged the duty element of a spoliation claim, the Illinois Supreme Court in *Dardeen v. Kuehling*, 821 N.E.2d 227 (Ill. 2004) outlined a two-step inquiry. First, courts must analyze whether a plaintiff's allegations demonstrate that "a duty arises by agreement, contract, statute, special circumstance, or [a defendant's] voluntary undertaking." *Id.* at 231. Second, if a duty has arisen, courts inquire whether "the duty extends to the evidence at issue – i.e., whether a reasonable person should have foreseen that the evidence was material to a potential civil action." *Id.* "If the plaintiff does not satisfy both prongs, there is no duty to preserve the evidence at issue." *Id.*

Here, Plaintiffs contend the duty arises out of the recordkeeping provisions of the TSR, 16 C.F.R. § 310.5, which were promulgated by the Federal Trade Commission to implement the Telemarketing and Consumer Fraud and Abuse Prevention Act. *Fed. Trade Comm'n v. Day Pacer LLC*, 125 F.4th 791, 799 (7th Cir. 2025). The TSR imposes specific recordkeeping duties on both telemarketers and the sellers that use telemarketing to solicit their goods and services. *See* 16 C.F.R. § 310.5 (recordkeeping requirements); § 310.2 (definitions of seller and telemarketer, the types of entities regulated by § 310.5). While later amended to add new

11

recordkeeping requirements in mid-2024,[4] the version of the TSR operative when all relevant calls occurred required Defendants to keep only two types of records at issue here: "telemarketing scripts" and "[a]ll verifiable authorizations or records of express informed consent or expressed agreement required to be provided or received under this Rule." *Id.* § 310.5 (Sept. 27, 2010).

The parties do not cite, nor has the Court found, any Illinois caselaw on how to analyze whether a specific statute gives rise to a duty to preserve for purposes of sustaining a spoliation claim. Accordingly, the Court's task is to "ascertain[] the law that the highest court of [Illinois] would articulate if our case were before it today." *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 928 (7th Cir. 2024). In *Boyd*, the seminal Illinois case on negligent spoliation, the Illinois Supreme Court cited approvingly to *Rodgers v. St. Mary's Hosp. of Decatur*, 597 N.E.2d 616 (Ill. 1992) for the principle that a "duty to preserve evidence may arise through … statute." *Boyd*, 652 N.E.2d at 270–71. In *Rodgers*, the plaintiff filed a malpractice claim against a hospital and some of its physicians following the death of his wife in childbirth. 597 N.E.2d at 618. Separately, Rodgers sued the hospital on the grounds that it had breached its statutory duty to preserve his wife's X-rays under an Illinois state law, which by its explicit text contemplated the possibility that X-rays could be used for litigation purposes.[5] *Id.*

---

[4] An amendment to the TSR went into effect on May 16, 2024, which added new recordkeeping requirements for telemarketing calls. *See* 16 C.F.R. § 310.5 (May 16, 2024). The last actionable call Plaintiffs allege was a call to Moore on March 13, 2024. *See* Doc. 95 ¶¶ 90–91.

[5] In relevant part, the X-Ray Retention Act not only required hospitals to maintain X-rays for 5 years, but provided further that "if the hospital has been notified in writing by an attorney … before the expiration of the 5 year period that there is a litigation pending … involving a particular X-ray … as possible evidence … the hospital shall keep such [X-ray] in its regular records until notified in writing by the [litigants' attorneys] or for a period of 12 years from the date that the X-ray … was produced, whichever occurs first in time." 210 ILCS 90/1.

Rodgers claimed these X-rays were crucial to proving his case against the physicians. *Id*. On appeal, the Illinois Supreme Court read into the at-issue statute a private right of action to pursue civil damages based on spoiled evidence, reasoning that it was "clear that the [Act] was designed to prevent the loss of evidence that may be essential to the pursuit or defense of a medical malpractice claim." *Id*. at 619–20.

The Court reads *Rodgers* and *Boyd* as instructing courts applying Illinois negligence law to seek textual indicia that a statute or regulation was designed to protect evidence likely to be relevant to civil litigation.[6] Applying that inquiry here, the Court concludes that the TSR was promulgated for the purpose of preserving evidence for litigation. Specifically, the Court notes that the then-operative version of the TSR required telemarketers to keep their scripts, which would be highly material to any litigation accusing telemarketers of engaging in deceptive or abusive practices. *See* 15 U.S.C. § 6102 (authorizing Federal Trade Commission to enact rules "prohibiting deceptive telemarketing acts.").[7] The next question is whether that "duty extends to the evidence at issue—*i.e.*, whether a reasonable person should have foreseen that the evidence was material to a potential civil action." *Dardeen v. Kuehling*, 821 N.E.2d 227, 231 (Ill. 2004),

---

[6] Arguably, *Rodgers* does not align perfectly with this Court's current negligence analysis, as the question in *Rodgers* was whether a statute supported an implied private right of action. 597 N.E.2d at 619 ("We … address whether the statute grants Rodgers a private cause of action by implication."); *see also Cowper*, 28 N.E.3d at 774 (viability of negligence claim and existence of implied right of action are legally distinct inquiries). But given the Illinois Supreme Court's approving citation to *Rogers* in *Boyd*, the Court predicts that Illinois state courts would apply the sort of analysis undertaken in *Rodgers* to assess whether a statute imposed an actionable duty for a negligent spoliation claim.

[7] The Court's conclusion would be even stronger were it interpreting the currently operative version of the TSR, which requires telemarketers and sellers to keep precisely the sorts of records that would be vital for litigation, but which regulated entities would not otherwise have a reason to preserve. *See, e.g.*, 16 C.F.R. § 310.5(2)(iv) (requiring record of whether called party was an individual consumer or a business consumer); § 310.5(2)(vi) (same for whether a call "utilizes a prerecorded message").

13

citing *Boyd*, 652 N.E.2d at 271. Given the Court's understanding of the statute's purpose, the Court thinks this second element is easily satisfied.

Defendants also attack the other elements of Plaintiffs' negligence claim, including causation and damages. But the Court emphasizes the next element of a negligent spoliation claim, which is that "the defendant breached [an actionable duty to preserve evidence] by *losing or destroying* the evidence." *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012) (emphasis added). Here, no well-pleaded allegations of loss or destruction of Plaintiffs' records appear in the current complaint. Plaintiffs allege that Defendants do "not honor [their] duty to keep track of records of calls or consent, for calls made on its behalf," that they "do[] not gather or maintain records of 'telemarketing scripts,'" nor "retrieve agent or subagent call or consent records upon termination, as required by the TSR." Doc. 95 ¶ 142. But though these phrases parrot the recordkeeping requirements of 16 C.F.R. § 310.5, there is no allegation that any of Plaintiffs' relevant records were actually lost or destroyed. Nor can the lack of records be reasonably inferred from Plaintiffs allegations about their own personal experiences, as they do not allege requesting the records at issue. Therefore, Count IV must be dismissed as inadequately pled.

This dismissal is without prejudice and with leave to amend. Fact discovery has been ongoing in this case for some time, and the Court would be open to considering allegations from Plaintiffs about the course and fruits of their discovery efforts, to the extent such allegations support their assertion that Defendants failed to preserve the relevant records. The Court notes that Plaintiffs will also have to plead that the loss or destruction of evidence caused them to be unable to prove their underlying suit, which will of course also be more clear now that Plaintiffs have had the benefit of discovery practice.

In summary, the Court finds that Defendants had an actionable duty to preserve certain records arising from the TSR, but that Plaintiffs have failed to adequately plead that any at-issue records were actually spoiled. Accordingly, Plaintiffs' negligent spoliation claim is dismissed without prejudice.

### IV. Motion to strike

Rule 12(f) of the Federal Rules permit parties to move for striking of "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. FED. R. CIV. P. 12(f). Defendants move to strike from the complaint allegations regarding the call Moore received in March 2024, Doc. 95 ¶ 90, as well as calls to Hossfeld on July 21, 2020 and September 13, 2021. *Id*. ¶¶ 44–49. Defendants argue these calls are not actionable because to bring a private action under the TCPA, a plaintiff must allege receiving more than one call within a twelve-month period. Doc. 106 at 3, citing 47 U.S.C. § 227(c)(5).

Here, however, the complaint alleges that both Hossfeld and Moore received two or more calls within a twelve-month period. Defendants do not persuasively argue that when a person receives multiple calls in alleged violation of the TCPA, any call outside twelve months of another are necessarily irrelevant. The Court reads 47 U.S.C. § 227(c)(5) as requiring only that at least two of a series of calls occurred within a twelve-month period. Additional calls may be useful to provide factual background, or as in the case here, because Plaintiffs allege do-not-call requests may have been made during those calls. As for the March 2024 call to Moore, the Court declines to strike this allegation either, though it notes that if Defendants believe Plaintiffs are barred as a matter of law from seeking relief for the March 2024 call, Defendants are welcome to raise this legal argument again at summary judgment or trial.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. The Court denies Defendants' motion with respect to Count II of Plaintiffs' complaint but grants it with respect to Counts III and IV. The dismissal is without prejudice. Defendants' concurrently filed motion to strike is denied in its entirety.

Dated: October 20, 2025

_____
APRIL M. PERRY
United States District Judge